Nos. 21-12828-DD, 22-10135-AA

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ERIC ROBERT RUDOLPH,

*Defendant-Appellant.*

On appeal from the United States District Court
for the Northern District of Georgia
Nos. 1:20-CV-02726-CAP, 1:00-CR-00805-CAP-1
and the United States District Court
for the Northern District of Alabama
Nos. 2:20-CV-08024-CLS, 2:00-CR-00422-CLS-TMP

## CONSOLIDATED BRIEF OF APPELLEE
## THE UNITED STATES OF AMERICA

RYAN K. BUCHANAN
  *United States Attorney*
GABRIEL A. MENDEL
  *Assistant United States Attorney*

600 United States Courthouse
75 Ted Turner Drive S.W.
Atlanta, GA 30303
(404) 581-6000

PRIM F. ESCALONA
  *United States Attorney*
MICHAEL B. BILLINGSLEY
  *Assistant United States Attorney*

1801 4th Ave North
Birmingham, AL 35203
(205) 244-2001

No. 21-12828-DD, 22-10135-AA

*United States of America v. Eric Robert Rudolph*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

The United States agrees that the Certificate of Interested Persons and Corporate Disclosure Statement included with Appellant's brief is a complete list of all people and entities known to have an interest in the outcome of this appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary in this case. The issues and positions of the parties, as presented in the record and briefs, are sufficient to enable the Court to reach a just determination.

Not only did Rudolph waive collateral attack in exchange for the government's agreement to forego the death penalty, but also, as Rudolph concedes, his attack is procedurally barred under this Court's controlling opinion in *Granda v United States*, 990 F.3d 1272 (11th Cir. 2021). (Def. Br. at 49). Finally, Supreme Court controlling authority in *Bousley v. United States*, 523 U.S. 614 (1998), requires Rudolph to show that he is innocent of not only the charges to which he pleaded guilty, but also to the charges that may have resulted in equal or more serious punishment (including death) that the government agreed to forego. This, Rudolph has not even attempted.

Given Rudolph's waiver and the controlling authority against him, oral argument is unnecessary.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement......................................................................................C-1

Statement Regarding Oral Argument .................................................. i

Table of Contents........................................................................... ii

Table of Citations..........................................................................iv

Statement of Jurisdiction................................................................xi

Statement of the Issues.................................................................. 1

Statement of the Case.................................................................... 2

   A. Course of Proceedings and Disposition Below...................... 2

   B. Statement of the Facts ..................................................... 3

      1. Rudolph's Criminal Conduct ........................................ 3

      2. NDGA Plea and Sentencing ......................................... 3

      3. NDAL Plea and Sentencing .......................................... 7

      4. NDGA Collateral Attack............................................... 9

      5. NDAL Collateral Attack .............................................. 11

   C. Standard of Review ....................................................... 12

Summary of the Argument............................................................. 13

Argument and Citations of Authority ............................................. 15

1. Rudolph's plea-bargain waivers bar his claims. ........................ 15

   A. Rudolph's collateral-attack waivers are binding, enforceable, and bar his claims. .......................................... 15

   B. Rudolph collaterally attacks his sentences and his convictions, and thus his claims are barred by his waivers. ..................................................................... 18

C. No exception excuses Rudolph from his bargained-for promises. ................................................................ 25

2. Rudolph's Procedural Default Bars His NDGA Claims.......... 36

A. Binding Circuit precedent forecloses Rudolph's effort to show cause to excuse his default......................................... 36

B. Supreme Court precedent forecloses Rudolph's effort to show actual innocence, since he admitted his guilt to the equally or more serious charges dismissed in exchange for his pleas. ................................................................ 39

1. *Bousley* requires Rudolph to show actual innocence of dismissed charges to which he already admitted his guilt............................................................ 40

2. *Bousley* extends to equally and more serious charges, as measured by the statutory maximum punishment. ....... 41

3. The NDGA court did not abuse its discretion by raising procedural default *sua sponte*, nor err in finding that the government did not deliberately waive procedural default by inadvertently omitting it from its initial response. ................. 49

A. The court did not abuse its discretion by ordering supplemental briefing and ruling on procedural default. .. 50

B. The district court did not err by finding that the government did not deliberately waive procedural default................................................................. 54

Conclusion.................................................................... 58

Certificate of Compliance and Service ......................................... 59

iii

# TABLE OF CITATIONS

**Federal Cases**

*Allen v. Thomas,*
    161 F.3d 667 (11th Cir. 1998)................................................... 22, 23

*Apprendi v. New Jersey,*
    530 U.S. 466 (2000) ................................................................ 37, 44

*Beeman v. United States,*
    871 F.3d 1215 (11th Cir. 2017)................................................. 11, 35

*Bellomo v. United States,*
    297 F. Supp. 2d 494 (E.D.N.Y. 2003) ........................................... 45

*Booth v. Thomas,*
    No. 7:12-cv-0747, 2015 WL 400662 (N.D. Ala. Jan. 28, 2015)..... 42

*\*Bousley v. United States,*
    523 U.S. 614 (1998)................................................................ passim

*Burgess v. United States,*
    874 F.3d 1292 (11th Cir. 2017)................................................. 52, 53

*Connally v. Gen. Constr. Co.,*
    269 U.S. 385 (1926) ....................................................................... 37

*Cowart v. United States,*
    139 F. App'x 206 (11th Cir. 2005) ................................................. 22

*\*Day v. McDonough,*
    547 U.S. 198 (2006)........................................................... 12, 51, 56

*Fordham v. United States,*
    706 F.3d 1345 (11th Cir. 2013) ...................................................... 12

*Freeman v. United States,*
    564 U.S. 522 (2011) ....................................................................... 20

\*Citations primarily relied upon. 11th Cir. R. 28-1(e).

iv

*Granda v United States,
  990 F.3d 1272 (11th Cir. 2021) ............................................... passim

Griffin v. United States,
  847 F. App'x 752 (11th Cir. 2021) ................................................. 51

Grzegorczyk v. United States,
  997 F.3d 743 (7th Cir. 2021) ........................................................ 26

Grzegorczyk v. United States,
  No. 21-5967, 2022 WL 2347941 (U.S. June 30, 2022) ................ 29

Harris v. Reed,
  489 U.S. 255 (1989) ...................................................................... 39

Howard v. United States,
  374 F.3d 1068 (11th Cir. 2004) .................................................... 37

In re Hammoud,
  931 F.3d 1032 (11th Cir. 2019) .................................................... 35

Jackson v. Walker,
  585 F.2d 139 (5th Cir. 1978) ........................................................ 48

James v. United States,
  550 U.S. 192 (2007) ...................................................................... 38

Johnson v. United States,
  135 S. Ct. 2551 (2015) .................................................................. 58

Lewis v. Peterson,
  329 F.3d 934 (7th Cir. 2003) ..............................................42, 45, 47

Lewis v. United States,
  518 U.S. 322 (1996) ...................................................................... 48

Lynn v. United States,
  365 F.3d 1225 (11th Cir. 2004) .................................................... 39

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

*Mathis v. United States,*
    136 S. Ct. 2243 (2016) ................................................................. 44

*McCoy v. United States,*
    266 F.3d 1245 (11th Cir. 2001) ................................................... 37

*Montano v. United States,*
    398 F.3d 1276 (11th Cir. 2005) ................................................... 47

*Oakes v. United States,*
    400 F.3d 92 (1st Cir. 2005) ......................................................... 51

*\*Oliver v. United States,*
    951 F.3d 841 (7th Cir. 2020) ..................................... 15, 29, 30, 34

*Pitts v. Cook,*
    923 F.2d 1568 (11th Cir. 1991) ................................................... 37

*\*Portis v. United States,*
    33 F.4th 331 (6th Cir. 2022) ................................. 15, 28, 32, 33, 34

*Reed v. Ross,*
    468 U.S. 1 (1984) ................................................................... 38, 56

*Ricketts v. Adamson,*
    483 U.S. 1 (1987) ......................................................................... 15

*Ring v. Arizona,*
    536 U.S. 584 (2002) ..................................................................... 43

*Smith v. GTE Corp.,*
    236 F.3d 1292 (11th Cir. 2001) ................................................... 38

*Smith v. Psychiatric Solutions, Inc.,*
    750 F.3d 1253 (11th Cir. 2014) ................................................... 53

*United States v. Barnes,*
    953 F.3d 383 (5th Cir. 2020) ....................................................... 26

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

vi

*United States v. Bascomb*,
  451 F.3d 1292 (11th Cir. 2006) ............................................... 15, 34

*United States v. Brown*,
  415 F.3d 1257 (11th Cir. 2005) ...................................................... 27

*United States v. Buchanan*,
  131 F.3d 1005 (11th Cir. 1997) ...................................................... 51

*United States v. Bushert*,
  997 F.2d 1343 (11th Cir. 1993) ...................................12, 16, 24, 25

*United States v. Campbell*,
  26 F.4th 860 (11th Cir. 2022) .................................................. 50, 57

*United States v. Caso*,
  723 F.3d 215 (D.C. Cir. 2013) ...........................................45, 46, 49

*United States v. Copeland*,
  381 F.3d 1101 (11th Cir. 2004) ...................................................... 21

*United States v. Davis*,
  139 S. Ct. 2319 (2019) .........................................................9, 11, 37

*United States v. Farmer*,
  923 F.2d 1557 (11th Cir. 1991) ...................................................... 21

*United States v. Frady*,
  456 U.S. 152 (1982) ........................................................................ 36

*United States v. Goodall*,
  21 F.4th 555 (9th Cir. 2021) .............................................. 15, 30, 31

*United States v. Grinard-Henry*,
  399 F.3d 1294 (11th Cir. 2005) ...................................................... 27

*United States v. Halter*,
  217 F.3d 551 (8th Cir. 2000) .......................................................... 49

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

vii

*United States v. Howle,*
166 F.3d 1166 (11th Cir. 1999) ....................................15, 25, 34, 35

*United States v. Hurtado-Candelo,*
No. 21-12809, 2022 WL 1122866 (11th Cir. Apr. 15, 2022) ....... 34

*United States v. Johnson,*
260 F.3d 919 (8th Cir. 2001) ......................................................... 45

*United States v. Joseph,*
811 F. App'x 595 (11th Cir. 2020) .......................................... 28, 29

*United States v. Lloyd,*
188 F.3d 184 (3d Cir. 1999) .......................................................... 49

*United States v. Loumoli,*
13 F.4th 1006 (10th Cir. 2021) ................................................ 22, 23

*United States v. Masilotti,*
565 F. App'x 837 (11th Cir. 2014) ................................................ 27

*United States v. Melton,*
861 F.3d 1320 (11th Cir. 2017) ..................................................... 27

*United States v. Mezzanatto,*
513 U.S. 196 (1995) ....................................................................... 15

*United States v. Mosley,*
173 F.3d 1318 (11th Cir. 1999) ..................................................... 17

*United States v. Northcutt,*
554 F. App'x 875 (11th Cir. 2014) ................................................ 26

*United States v. Olano,*
507 U.S. 725 (1993) ................................................................. 50, 54

*United States v. Palmer,*
456 F.3d 484 (5th Cir. 2006) ......................................................... 21

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

*United States v. Puentes-Hurtado,*
    794 F.3d 1278 (11th Cir. 2015) ..................................................... 22

*United States v. Rubbo,*
    396 F.3d 1330 (11th Cir. 2005) ..................................................... 27

*United States v. Scruggs,*
    714 F.3d 258 (5th Cir. 2013) ................................................... 45, 48

*United States v. Wiggins,*
    131 F.3d 1440 (11th Cir. 1997) ............................................... 12, 17

*Williams v. United States,*
    785 F. App'x 710 (11th Cir. 2019) .................................................. 21

*Witt v. Metro. Life Ins. Co.,*
    772 F.3d 1269 (11th Cir. 2014) ............................................... 12, 54

*Wood v. Milyard,*
    566 U.S. 463 (2012) ................................................... 51, 54, 55, 56

*Zant v. Stephens,*
    462 U.S. 862 (1983) .................................................................. 43

**Federal Statutes**

18 U.S.C. § 844(d) ...................................................... 4, 40, 41, 44, 48
18 U.S.C. § 844(i) ................................................................... passim
18 U.S.C. § 924(c) ................................................................... passim
18 U.S.C. § 924(c)(3)(B) ................................................................ 37
18 U.S.C. § 924(o) ....................................................................... 36
18 U.S.C. § 3231 ........................................................................ xi
18 U.S.C. § 3592(c) ...................................................................... 7
18 U.S.C. § 3771 ..................................................................... 5, 16

\*Citations primarily relied upon. 11th Cir. R. 28-1(e).

21 U.S.C. § 841 ................................................................ 47

28 U.S.C. § 2253(c) ...........................................................xi

28 U.S.C. § 2255 ...................................................... passim

28 U.S.C. § 2255(a) ..................................................... 18, 19

**Federal Rules**

Fed. R. App. P. 4(b)(1)(A) ..................................................xi

Fed. R. App. P. 32(a)(5) ...................................................... 59

Fed. R. App. P. 32(a)(6) ...................................................... 59

Fed. R. App. P. 32(a)(7)(B) ................................................. 59

Fed. R. App. P. 32(f) ........................................................... 59

Fed. R. Crim. P. 11(c)(1)(C) ....................................... 4, 7, 20

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

Nos. 21-12828-DD, 22-10135-AA

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ERIC ROBERT RUDOLPH,

*Defendant-Appellant.*

## STATEMENT OF JURISDICTION

(A)  The district courts had subject matter jurisdiction over the underlying criminal cases based on 18 U.S.C. § 3231.

(B)  The court of appeals has jurisdiction over this direct appeal from the denial of Rudolph's motions to vacate sentence based on the district courts' issuing certificates of appealability under 28 U.S.C. § 2253(c).

(C)  The notices of appeal were timely filed on August 18, 2021, and January 7, 2022, within 60 days of the entries of the district court's orders, on July 29, 2021, and November 8, 2021, respectively. Fed. R. App. P. 4(b)(1)(A).

(D)  This appeal is from final orders that dispose of all the parties' claims in these cases.

## STATEMENT OF THE ISSUES

1. In plea agreements that spared Rudolph from the death penalty and resulted in the dismissal of other charges, Rudolph waived his right to collaterally attack his sentences. Having received the benefit of the bargain, should Rudolph be held to his promises?

2. Rudolph procedurally defaulted his claims and this Court's decision in *Granda* precludes him from showing cause to excuse that default. Can Rudolph avoid procedural default under the actual innocence exception when he admitted his guilt to equally and more serious charges dismissed in exchange for his pleas?

3. After this Court's decision in *Granda* made clear that Rudolph's claims were barred by procedural default, the district court asked for supplemental briefing. Where the government inadvertently omitted procedural default from its initial response, did the court err by finding that the government did not deliberately waive this defense, or abuse its discretion by raising the issue *sua sponte* and giving Rudolph a full opportunity to respond?

1

## STATEMENT OF THE CASE

### A. Course of Proceedings and Disposition Below

In indictments in the Northern District of Georgia ("NDGA") and the Northern District of Alabama ("NDAL"), Rudolph was indicted on charges largely related to bombings in which he killed two people and injured many others. (NDGA Doc. 4; NDAL Cr. Doc. 17).[1]

After years as a fugitive, Rudolph was captured and entered negotiated pleas in both cases. (NDGA Doc. 18-1; NDAL Cr. Doc. 537). In exchange for the government foregoing the death penalty and dismissing other charges, Rudolph entered binding pleas to several counts of using explosive devices in violation of 18 U.S.C. § 844(i) and using destructive devices in violation of 18 U.S.C. § 924(c) and waived his right to appeal or collaterally attack his sentence. (*Id.*).

Under his binding pleas, Rudolph was sentenced to several consecutive life sentences plus 120 years. (NDGA Doc. 24; NDAL Cr. Doc. 559). Fifteen years later, Rudolph moved to vacate his convictions and sentences on the § 924(c) counts and sought resentencing as to the remaining counts. (NDGA Doc. 30; NDAL Cv.

---

[1] "NDGA Doc." refers to documents filed in the Northern District of Georgia case, "NDAL Cr. Doc." refers to documents filed in the Northern District of Alabama criminal case, and "NDAL Cv. Doc." refers to documents filed in the Northern District of Alabama § 2255 proceeding.

Doc. 1). Those motions were denied, certificates of appealability were granted, and Rudolph appealed. (NDGA Docs. 49, 51; NDAL Cv. Docs. 22, 25, 26). Rudolph is incarcerated.

### B. Statement of the Facts

#### 1. Rudolph's Criminal Conduct

Rudolph committed a series of bombings in Atlanta and Birmingham between 1996 and 1998, killing two people and injuring more than one hundred others. (NDGA Doc. 18-2 at 10-18). His crimes included the bombing in Centennial Park during the 1996 Olympics, the bombing of the Northside Family Planning Clinic in Atlanta, the bombing of The Otherside Lounge in Atlanta; and the bombing of the New Woman All Women Health Clinic in Birmingham. (*Id.*). The heinous nature of these crimes, designed to maximize death and suffering and to target law enforcement and medical personnel by timing the bombs to strike first responders, are recounted in detail in Exhibit A to Rudolph's plea agreements. (*Id.*).

#### 2. NDGA Plea and Sentencing

A grand jury in the Northern District of Georgia charged Rudolph with, in relevant part, five counts of maliciously damaging property with an explosive device in violation of 18 U.S.C. § 844(i) (Counts One, Five, Seven, Ten, Twelve) and three counts of using a destructive device during a crime of violence in violation of 18 U.S.C. § 924(c)

(Counts Two, Six, Eleven). The violation of § 844(i) charged in Count One resulted in the death of Alice Hawthorne. (NDGA Doc. 4). The remaining counts charged Rudolph with other crimes, including transporting explosives and communicating threats. (*Id.*). Count Nineteen charged Rudolph with transporting the explosive used in the bombing of the New Woman All Women Health Care Clinic in Birmingham, causing the death of Robert Sanderson, in violation of 18 U.S.C. § 844(d). (*Id.*).

Rudolph pleaded guilty to Counts One, Two, Five, Six, Seven, Ten, Eleven, and Twelve of the indictment. (NDGA Doc. 18, 19). He did so under a written plea agreement made under Federal Rule of Criminal Procedure 11(c)(1)(C), under which the court would be required to impose a sentence of life imprisonment as to each of Counts One, Two, Six, and Eleven and the "the maximum term of imprisonment allowed by law" on the remaining counts. (*Id.* ¶ 7).

In exchange, the United States agreed to not seek the death penalty and to dismiss Counts Three, Four, Eight, Nine and Thirteen through Twenty-One of the indictment – of which both Counts Three and Nineteen were punishable by death and Counts Eight and Thirteen were punishable by consecutive life sentences. (*Id.* ¶ 9). Rudolph further agreed to disclose where he had hidden bombs and

dynamite, including at five identified locations and the United States agreed not to bring further charges based on those devices. (*Id.* ¶ 11).[2]

In his plea agreement, Rudolph waived his ability to collaterally attack his sentence. The plea agreement contained this waiver:

> WAIVER OF APPEAL: In consideration of the Government's recommended disposition, the defendant voluntarily and expressly waives, to the maximum extent permitted by federal law, the right to appeal his conviction and sentence in this case, and the right to collaterally attack his sentence in any post-conviction proceeding, including motions brought under 28 U.S.C. § 2255 or 18 U.S.C. § 3771, on any ground.

(*Id.* ¶ 14). The plea agreement also contained the following language accompanying the petitioner's signature:

> **I also have discussed with my attorney the rights I may have to appeal or challenge my sentence, and I understand that the appeal waiver contained in the Plea Agreement will prevent me, to the maximum extent permitted by federal law, from appealing my conviction or sentence or challenging my sentence in any post-conviction proceeding.**

(*Id.* at 7) (emphasis in original).

---

[2] As explained below, Rudolph also agreed to plead guilty in the NDAL case, and the government agreed to withdraw its previously filed notice seeking the death penalty. (NDGA Doc. 18-2 ¶ 8).

During the April 13, 2005 plea colloquy, the court inquired about the waiver in the plea agreement:

> THE COURT: Also, under some circumstances, you and the government may have the right to appeal any sentence that the Court imposes, but in your plea agreement, you are waiving certain appeal rights. Normally, you would have the right to appeal the sentence that the Court imposes, but with the exceptions noted in your plea agreement, you are giving up that right, which means that you'll be bound by the Court's decisions. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You are also waiving your right to ever collaterally attack your sentence in any post conviction proceeding, such as a habeas corpus or other type proceeding. Do you understand that?
>
> THE DEFENDANT: Yes.

(NDGA Doc. 19 at 49). The court also inquired about the binding nature of the plea and resulting sentence. (*Id.* at 19). The court accepted Rudolph's plea and found that his waiver was "made knowingly and voluntarily." (*Id.* at 52).

The court sentenced Rudolph to life imprisonment on each of Counts One, Two, Six, and Eleven; 20 years' imprisonment on Counts Five and Twelve; and 40 years' imprisonment on Counts

Seven and Ten, all to run consecutively to each other, for a total of four consecutive life sentences plus 120 years. (NDGA Doc. 24).

### 3. NDAL Plea and Sentencing

A grand jury in the Northern District of Alabama returned a superseding indictment charging Rudolph with:

- Maliciously damaging property at New Woman All Women Health Care Clinic in Birmingham, with an explosive device, resulting in the death of Robert D. Sanderson and personal injury to Emily Lyons, in violation of 18 U.S.C. § 844(i) (Count One);

- Knowingly using a firearm, a destructive device, during and in relation to the crime of violence charged in Count One, in violation of 18 U.S.C. § 924(c) (Count Two);

(NDAL Cr. Doc. 17). The grand jury also returned a Notice of Special Findings, finding that Rudolph's § 844(i) offense triggered five aggravating factors justifying a death sentence under 18 U.S.C. § 3592(c). (*Id.* at 2-3). The government filed a notice of intent to seek the death penalty. (NDAL Cr. Doc. 79).

Rudolph pleaded guilty to both counts of the superseding indictment. (NDAL Cr. Doc. 537, 543). He did so under a plea agreement, made under Rule 11(c)(1)(C), requiring the Court to impose life imprisonment as to Counts One and Two. (*Id.* ¶ 7). Rudolph agreed to disclose where he had hidden bombs and dynamite, including at five identified locations. (*Id.* ¶ 10).

In exchange, the United States agreed to withdraw its notice of intent to seek the death penalty and to bring no further criminal charges related to these charges or the information he provided about hidden bombs and dynamite. (*Id.* ¶¶ 6, 9).

In his plea agreement, Rudolph waived his ability to collaterally attack his sentence. It contained identical waiver language as in the NDGA agreement. (*Id.* ¶ 13).

During the April 13, 2005 colloquy, the court read the waiver portions of the agreement and discussed them with Rudolph:

THE COURT: Did you read both of the portions of your plea agreement that I just quoted before you signed the document?

THE DEFENDANT: Many times, Your Honor.

THE COURT: Did you discuss those portions of your plea agreement with your attorneys before you signed the document?

THE DEFENDANT: I did, Your Honor.

THE COURT: And do you clearly understand that by executing this plea agreement and entering your two pleas of guilty, you will have waived or given up your right to appeal your conviction, your sentences, as well as your right to challenge your sentences in any post-conviction proceeding?

THE DEFENDANT: Yes, I understand.

(NDAL Cr. Doc. 543 at 20-22). The court also inquired with Rudolph about the binding nature of the plea and resulting sentence. (*Id.* at 15-17). After completing its colloquy, the court found that Rudolph's pleas were "knowing and voluntary." (*Id.* at 39).

As promised, the government moved to withdraw the notice of intent to seek the death penalty, which the court granted, and brought no further charges against Rudolph. (*Id.* at 40; NDAL Cr. Doc. 539). The court sentenced Rudolph to life imprisonment on Counts One and Two, to run consecutively. (NDAL Cr. Doc. 559).

### 4. NDGA Collateral Attack

Rudolph's pro se § 2255 motion was replaced by a counseled motion. (NDGA Docs. 30, 36). Rudolph collaterally attacked his § 924(c) convictions and sentences (Counts Two, Six, and Eleven) based on *United States v. Davis*, 139 S. Ct. 2319 (2019), which held that the residual clause of § 924(c) is unconstitutionally vague. (*Id.*). Rudolph claimed his sentences were "unlawful" and "the sentences violate due process of law." (NDGA Doc. 36 at 4). He also asked the court to revisit the sentences on his remaining convictions (Counts One, Five, Seven, Ten, and Twelve), though he raised no challenge to those convictions. (*Id.* at 20-21).

The government opposed Rudolph's motion, raising both his collateral attack waiver and the then-unresolved question of whether a

reckless *mens rea* satisfied the elements clause. (NDGA Doc. 37). When the Supreme Court granted certiorari to resolve the latter question, the parties jointly agreed to a stay. (NDGA Docs. 39-41).

During the stay, this Court decided *Granda v. United States*, 990 F.3d 1272 (11th Cir. 2021), which held that a *Davis*-claim is not sufficiently novel to establish cause to excuse procedural default. In light of that intervening precedent, the court directed the parties "to brief the issue of procedural default." (NDGA Doc. 43). The government filed a brief setting forth why procedural default barred Rudolph's claims. (NDGA Doc. 44). Rudolph objected to the district court raising the issue *sua sponte*. (NDGA Doc. 45). The government replied, explaining why Rudolph could not establish actual innocence, while acknowledging its inadvertent omission of procedural default in its initial response. (NDGA Doc. 46).

The district court denied Rudolph's motion. (NDGA Doc. 49). It found that Rudolph's collateral attack waiver was knowingly and voluntarily made and barred his claims. (*Id.* at 43-57). The court also found that the government did not deliberately waive procedural default, that the court could raise the issue *sua sponte*, and that procedural default barred Rudolph's claims. (*Id.* at 8-42). The court granted a certificate of appealability on: 1) "[w]hether Mr. Rudolph's plea agreement ... now bars him from attacking his conviction under

10

*United States v. Davis*, 139 S. Ct. 2319 (2019), by way of a motion brought under 28 U.S.C. § 2255;" and 2) "whether this court erred in determining that he has procedurally defaulted his *Davis* claims." (*Id.* at 58).

### 5. NDAL Collateral Attack

Rudolph's § 2255 motion was filed pro se. (NDAL Doc. 1). The government responded, explaining that Rudolph's motion was barred by his plea waiver and that Rudolph could not make the required showing under *Beeman v. United States*, 871 F.3d 1215 (11th Cir. 2017), that his § 924(c) conviction was based on the residual clause. (NDAL Cv. Docs. 3, 6). Now represented by counsel, Rudolph replied. (NDAL Cv. Doc. 14). The government filed a response as ordered, explaining why: 1) Rudolph's waiver barred his claims; 2) Rudolph could not satisfy *Beeman*; and 3) Rudolph could not establish actual innocence under *Bousley*. (NDAL Cv. Docs. 15, 18).

The district court denied Rudolph's motion. (NDAL Cv. Doc. 22). It found that Rudolph's collateral attack waiver was knowingly and voluntarily made and barred his claims. (*Id.* at 33-42). The court granted a certificate of appealability as to "[w]hether Mr. Rudolph's plea agreement ... now bars him from attacking his conviction under *United States v. Davis*, 139 S. Ct. 2319 (2019), by way of a motion brought under 28 U.S.C. § 2255." (NDAL Cv. Doc. 25).

**C. Standard of Review**

1. This Court reviews *de novo* the validity and interpretation of an appeal waiver. *United States v. Bushert*, 997 F.2d 1343, 1352 (11th Cir. 1993). But a district court's factual finding that the defendant's plea and waiver were knowing and voluntary is subject to review only for clear error. *United States v. Wiggins*, 131 F.3d 1440, 1443 (11th Cir. 1997).

2. This Court reviews *de novo* whether procedural default precludes a § 2255 petitioner's claim – a mixed question of law and fact. *Fordham v. United States*, 706 F.3d 1345, 1347 (11th Cir. 2013).

3. A district court's decision to raise a threshold defense *sua sponte* is reviewed for abuse of discretion. *Day v. McDonough*, 547 U.S. 198, 199-200 (2006). With regard to any alleged waiver, this Court reviews *de novo* a district court's legal conclusions, but reviews for clear error any factual findings underlying those legal conclusions. *Witt v. Metro. Life Ins. Co.*, 772 F.3d 1269, 1274 (11th Cir. 2014).

## SUMMARY OF THE ARGUMENT

To avoid the death penalty and obtain the dismissal of other charges, Rudolph pleaded guilty and waived his right to collaterally attack his sentences. This Court should join the three circuits to reach this issue and hold that a *Davis* claim is barred by these valid and enforceable waivers. Rudolph's claim that his § 2255 motions only attack his convictions, not his sentences, is foreclosed by the plain statutory language and his own pleadings. And there is no exception – in this Circuit or any other – that excuses Rudolph from his contractual promises, nor is there any injustice in holding Rudolph to the bargain from which he has benefited by avoiding the death penalty and other charges to which he admitted his guilt.

Rudolph also procedurally defaulted his claims. Binding precedent precludes his effort to show cause to excuse this default, as a *Davis* claim is insufficiently novel. Similarly, binding Supreme Court precedent precludes Rudolph's claims of actual innocence. In a case like this — when a defendant pleaded guilty in exchange for the government's forgoing equally or more serious charges – Rudolph's showing of actual innocence must extend to the forgone charges as well. Rudolph's plea colloquies and plea agreements established that he was guilty of those charges, and he does not attempt to meet his burden of showing actual innocence of them.

Finally, the district court did not abuse its discretion by following precedent from the Supreme Court and this Court, *sua sponte* raising procedural default, and giving Rudolph a full opportunity to respond. Though the government did not raise procedural default in its initial response, the district court did not err in finding that this inadvertent omission constituted – at most – forfeiture that did not preclude the court from raising the issue *sua sponte*.

The denials of Rudolph's **§** 2255 motions should be affirmed.

ARGUMENT AND CITATIONS OF AUTHORITY

**1.  Rudolph's plea-bargain waivers bar his claims.**

A defendant may knowingly and voluntarily waive statutory or constitutional rights as part of a plea agreement. *See, e.g.*, *Ricketts v. Adamson*, 483 U.S. 1, 8-10 (1987) (upholding plea agreement's waiver of right to raise a double-jeopardy defense). Even the "most fundamental protections afforded by the Constitution" may be waived. *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995). This Court has recognized that plea bargains are like contracts and should be interpreted as such. *United States v. Howle*, 166 F.3d 1166, 1168 (11th Cir. 1999).

Rudolph knowingly and voluntarily waived his right to collaterally attack his sentences and should be held to his promises. This Court should join its sister circuits and find that Rudolph's collateral-attack waivers bar his *Davis* claims. *See Portis v. United States*, 33 F.4th 331 (6th Cir. 2022); *United States v. Goodall*, 21 F.4th 555 (9th Cir. 2021); *Oliver v. United States*, 951 F.3d 841 (7th Cir. 2020).

**A. Rudolph's collateral-attack waivers are binding, enforceable, and bar his claims.**

In general, a knowing and voluntary waiver of the right to appeal or to file a collateral attack is enforceable. *United States v. Bascomb*, 451 F.3d 1292, 1294-97 (11th Cir. 2006). For a court to uphold a waiver,

15

the government need only demonstrate that "(1) the district court specifically questioned the defendant concerning the sentence appeal waiver . . . or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." *United States v. Bushert*, 997 F.2d 1343, 1351 (11th Cir. 1993). Here, the district courts questioned Rudolph about the waivers during his plea hearings, and Rudolph knowingly and voluntarily waived his right to file a motion to vacate sentence under § 2255.

Rudolph's plea agreements each included waivers of his right to collaterally attack his sentence:

> WAIVER OF APPEAL: In consideration of the Government's recommended disposition, the defendant voluntarily and expressly waives, to the maximum extent permitted by federal law, the right to appeal his conviction and sentence in this case, and the right to collaterally attack his sentence in any post-conviction proceeding, including a motion brought under 28 U.S.C. § 2255 or 18 U.S.C. § 3771, on any ground.

(NDGA Doc. 18-2 ¶ 14; NDAL Cr. Doc. 537 ¶ 13).

Rudolph acknowledged that he discussed the waivers with his attorneys and understood them, and that he understood that he waived his right to challenge his sentence in any post-conviction proceeding. (NDGA Doc. 18-2 at 7; NDAL Cr. Doc. 537 at 7). And at his plea hearings, the district courts examined Rudolph about these

waivers, asked whether he understood that he was waiving the right to collaterally attack his sentences, and Rudolph confirmed that he did. (NDGA Doc. 19 at 49-52; NDAL Cr. Doc. 543 at 20-22).

The record shows that Rudolph was aware of and understood the significance of the waiver. In denying Rudolph's § 2255 motions, both district courts found that Rudolph's plea and waiver were knowingly and voluntarily made, just as they found when accepting Rudolph's pleas in 2005. (NDGA Doc. 49 at 52; NDAL Cv. Doc. 22 at 51-52). These fact findings are subject to review only for clear error. *United States v. Wiggins*, 131 F.3d 1440, 1443 (11th Cir. 1997). This is because "[t]hese matters are better committed to the good judgment of the district judge, who observes the defendant's demeanor, life experience, and intelligence." *United States v. Mosley*, 173 F.3d 1318, 1323 (11th Cir. 1999). (citations omitted). Rudolph shows no way in which both district courts that denied his § 2255 motions – the same judges who conducted the plea colloquies in 2005 – clearly erred in finding his pleas and waivers to be knowing and voluntary.

Rudolph's waivers were knowingly and voluntarily made, are enforceable, and bar his collateral attacks.

**B. Rudolph collaterally attacks his sentences and his convictions, and thus his claims are barred by his waivers.**

Rudolph seeks to avoid his promises by arguing that he waived only the right to collaterally attack his sentences, not his convictions. This distinction is untenable. Every attack under § 2255 is, by definition, a motion "to vacate, set aside or correct *the sentence*" of the petitioner. 28 U.S.C. § 2255(a) (emphasis added). A defendant cannot bring a § 2255 motion that does not attack his sentence.

In his plea agreements, Rudolph expressly waived "the right to collaterally attack his sentence in any post-conviction proceeding, including a motion brought under 28 U.S.C. § 2255." (NDGA Doc. 18-2 ¶ 14; NDAL Cr. Doc. 537 ¶ 13). This waiver language tracks the statutory language of 28 U.S.C. § 2255, which is titled "Federal custody; remedies on *motion attacking sentence*." (emphasis added). Section 2255 never refers to a collateral attack on a "conviction." Instead, it describes all collateral attacks as efforts "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

This language follows from the fact that § 2255 does not provide a general avenue of relief for anyone who has been wrongly convicted. Rather, it is limited to those currently "in custody under sentence" imposed by a federal court and "claiming the right to be released." 28 U.S.C. § 2255(a). Thus, the only claims that may be raised under § 2255 are attacks on the sentence: (1) "the sentence was imposed in

violation of the Constitution or laws of the United States,"; (2) "the court was without jurisdiction to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law or [(4)] is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

Thus, Rudolph's denial that his § 2255 motions are collateral attacks on his sentences disregards the plain language of the statute. If Rudolph is not attacking his sentences, then his motion must be dismissed because it is not cognizable under § 2255. Otherwise, Rudolph's waivers bar his claims because they "collaterally attack his sentence in ... a motion brought under 28 U.S.C. § 2255." (NDGA Doc. 18-2 ¶ 14; NDAL Cr. Doc. 537 ¶ 13).

Along with the plain statutory language, Rudolph's pleadings show that his *Davis* claims are collateral attacks on his sentences. His § 2255 pleadings asked the district courts to "vacate the conviction and sentence" for his Section 924(c) counts and to "set the case for resentencing as to" the remaining charges. (NDGA Doc. 36 at 1; NDAL Cv. Doc. 14 at 29). Rudolph claimed that his sentences were "unlawful" and "the sentences violate due process of law." (NDGA Doc. 36 at 4). This language was no accident; it was necessary to state valid claims under § 2255, as set forth above.

And that is why the waiver in the plea agreement is phrased as it is. Direct appeals can be of convictions or of sentences, but § 2255

19

motions must attack the sentence. Rudolph's argument makes particularly little sense in the context of his case. Rudolph points to nothing showing that the parties intended for him to waive all his rights to attack the plea bargain, but somehow maintain the right to collaterally attack his convictions themselves. To the contrary, the plea bargain is simple and easily understood. Rudolph would plead guilty and agree to several life sentences, abandon all future challenges in the case, and provide the location of his remaining explosives, in exchange for the government foregoing the death penalty and any other charges. Rudolph should not now be permitted to evade the bargain after he has received its benefits.[3]

Moreover, Rudolph's pleas were binding pleas under Federal Rule of Criminal Procedure 11(c)(1)(C). Thus, more than in the usual case, "the conviction and the sentence are intertwined." (NDGA Doc. 49 at 50). "[I]t is the binding plea agreement that is the foundation for the term of imprisonment to which the defendant is sentenced." *Freeman v. United States*, 564 U.S. 522, 535 (2011) (Sotomayor, J., concurring).

---

[3] To the extent the government more recently included waiver language in other cases to bar collateral attacks on both convictions and sentences, this redundancy serves to insulate the government from spurious efforts by defendants to circumvent their plea waivers and does not affect the analysis.

The relief Rudolph seeks on his convictions can only be achieved through attacks on his sentences – barred by his waivers.

Rudolph points to cases in which courts have distinguished between a challenge to a conviction and a challenge to a sentence, but in contexts that are not relevant here. First, Rudolph cites cases holding that a sentence-appeal waiver does not imply a waiver of the right to challenge a conviction on direct appeal. *See United States v. Palmer*, 456 F.3d 484 (5th Cir. 2006); *United States v. Copeland*, 381 F.3d 1101 (11th Cir. 2004). That is not the basis for which the government invoked Rudolph's waivers. A direct appeal of a conviction is distinguishable from a § 2255 proceeding because, in a direct appeal, a defendant's right to appeal his conviction is not tied to his right to challenge his sentence. Thus, even a defendant who has completed his sentence can file a direct appeal challenging his conviction because that conviction is a final decision in its own right. *See, e.g.*, *United States v. Farmer*, 923 F.2d 1557, 1562-68 (11th Cir. 1991) (evaluating merits of challenge to conviction for defendant who completed sentence).

But § 2255 contains no provision for freestanding attacks on convictions and cannot be brought by a movant whose sentence is complete. *See Williams v. United States*, 785 F. App'x 710, 712–13 (11th Cir. 2019) ("[A] movant cannot directly attack a conviction

when he has already served the sentence, even if that conviction is used to enhance a later sentence."). Because a § 2255 motion is by definition a collateral attack on a sentence, Rudolph's direct-appeal citations are inapt.

Second, Rudolph cites three cases declining to apply a waiver in the post-conviction context, *Cowart v. United States*, 139 F. App'x 206 (11th Cir. 2005) (unpublished), *Allen v. Thomas*, 161 F.3d 667 (11th Cir. 1998), and *United States v. Loumoli*, 13 F.4th 1006 (10th Cir. 2021). Those cases, too, are readily distinguished.

In *Cowart*, this Court held that a generic waiver of the right "to collaterally attack [the defendant's] sentence" did not waive the defendant's right to bring a claim of ineffective assistance of counsel regarding her plea or the plea agreement itself. 139 F. App'x at 208. This reflects the uncontested exception for claims alleging ineffective assistance in the plea, which cannot be waived by the very agreement about which the defendant alleges ineffective assistance. *See United States v. Puentes-Hurtado*, 794 F.3d 1278, 1284 (11th Cir. 2015) (holding that waiver did not bar ineffective assistance claim because "an appeal waiver or collateral attack waiver which is part of a guilty plea is unenforceable if the plea itself is involuntary or unintelligent"). Rudolph has not alleged ineffective assistance of counsel, so *Cowart* has no application here.

In *Allen*, this Court held that a state defendant's agreement to a provision in his plea agreement that "he will never apply, orally or in writing for parole, commutation of his sentence, reprieve, or any other form of relief from life imprisonment" did not bar him from seeking federal habeas corpus relief. 161 F.3d at 668. This Court explained that the text and the context of the waiver made it ambiguous as to whether the defendant was merely forgoing potential parole or clemency proceedings rather than give up the right to federal habeas corpus relief. *Id.* at 671-672. It also explained that the language was too general "to constitute a valid waiver of specific rights." *Id.* at 672. In contrast, Rudolph expressly waived the right to collaterally attack his sentence.

Finally, in *Loumoli*, the Tenth Circuit held that the defendant was permitted to raise a *Davis* claim even though he waived his right to attack his sentence under § 2255. 13 F.4th at 1010. The government there claimed that the waiver covered Loumoli's challenge to his conviction because, in § 2255, the term "sentence" is "a term of art that 'refers both to the sentence and the underlying conviction.'" *See* 13 F.4th at 1010. The Tenth Circuit disagreed, finding that the statutory language of § 2255 "does not compel the conclusion that the term 'sentence' includes convictions."

Whatever *Loumoli*'s merits, its rationale does not help Rudolph. *Loumoli* did not hold a prisoner can attack his conviction under § 2255 without attacking his sentence — a conclusion that would contradict the plain language of the statute and Rudolph's own pleadings. Even if the meaning of "sentence" excludes "conviction," a collateral attack on a conviction and sentence cannot exclude a collateral attack on a sentence. Thus, the plain language of Rudolph's waivers covers his *Davis* claims because it makes clear that Rudolph waived his right to attack his sentences. Nothing in the plea agreement suggests that Rudolph could recover that right by attacking his convictions as well. Rudolph cannot reasonably claim that "sentence" means "sentence and not conviction" when used in his § 2255 waiver (*see* Def. Br. 22-27), but also means "conviction and not sentence" when used in § 2255 itself. Consistent with the statute and the relief sought in his pleadings, Rudolph's collateral-attack waivers bar his *Davis* claims.

Rudolph also contends that his waiver was somehow involuntary because he did not understand it would preclude these § 2255 claims. When "it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver," the waiver will be enforced. *Bushert*, 997 F.2d at 1351. Here, it is clear that Rudolph understood that his waiver would bar his ability to collaterally attack his sentences. The plain language of his plea

24

agreements repeatedly demonstrated that Rudolph was waiving his ability to bring a collateral attack on his sentence. The district courts examined Rudolph about these waivers and whether he discussed the waivers with counsel, asked whether he understood that he was waiving these rights, and Rudolph confirmed that he did. (NDGA Doc. 19 at 49-52; NDAL Cr. Doc. 543 at 20-22). Again, Rudolph shows no clear error in the district courts' findings that his pleas and waivers were knowing and voluntary, and his *Davis* claims are barred.

## C. No exception excuses Rudolph from his bargained-for promises.

Rudolph next attempts to avoid his promises by invoking a waiver exception that: 1) this Court has yet to apply; and 2) would not cover his claims. Even circuits that recognize similar exceptions have refused to extend them to cover *Davis* claims.

This Court has sometimes referenced a possible "illegal sentence" exception to plea-bargain waivers. *See, e.g., Bushert*, 997 F.2d at 1351 n. 18 (acknowledging possible exception for sentences exceeding statutory maximum, but noting that "[w]e do not decide these matters today, however, because they are not presented in the instant case"); *Howle*, 166 F.3d at 1169 n.5 ("In extreme circumstances—for instance, if the district court had sentenced [a defendant] to a public flogging — due process may require that an appeal be heard despite a previous

25

waiver."). But in the three decades since *Bushert*, this Court has yet to find the need to hold that such an exception exists or to apply it to excuse a defendant from his waiver.[4] Instead, *Bushert* "left open the question of whether a sentence-appeal waiver would be enforced when a defendant wished to appeal a sentence that exceeded the statutory maximum." *United States v. Northcutt*, 554 F. App'x 875, 877 (11th Cir. 2014). And at least one circuit has expressly rejected such an exception. *See United States v. Barnes*, 953 F.3d 383, 389 (5th Cir. 2020) ("[D]efendants can waive the right to challenge both illegal and unconstitutional sentences.").

Rudolph has brought garden-variety collateral attacks, alleging that his § 924(c) sentences are invalid because subsequent precedent makes it erroneous to rely on an § 844(i) charge as a crime of violence. *See Grzegorczyk v. United States*, 997 F.3d 743, 748 (7th Cir. 2021) (describing a *Davis*-based collateral attack as "an issue of statutory construction, not a claim of constitutional immunity from prosecution").

Rudolph fails to show why his claims are so extreme as to merit different treatment than the dozens of cases in which this Court has

---

[4] Rudolph's invocation of *Bushert*'s hypothesized "illegal sentence" exception to the plea-bargain waiver is further acknowledgment that his § 2255 motions are collateral attacks on his sentences, not just his conviction – as discussed above in Section 1.B.

upheld plea-bargain waivers to bar diverse statutory and constitutional claims. *See, e.g.*, *United States v. Rubbo*, 396 F.3d 1330, 1335 (11th Cir. 2005) ("[T]he right to appeal a sentence based on *Apprendi /Booker* grounds can be waived in a plea agreement."); *United States v. Brown*, 415 F.3d 1257, 1272 (11th Cir. 2005) (enforcing an appeal waiver despite defendant's contention that the statute under which he was convicted violated the non-delegation doctrine of Article I of the Constitution); *United States v. Grinard-Henry*, 399 F.3d 1294, 1296-97 (11th Cir. 2005) (rejecting claim that sentence violated Fifth and Sixth Amendments when those constitutional claims were not exceptions in the plea agreement).

As this Court has recognized, allocating the risks of future changes in the law is one of the essential functions of a plea-bargain waiver:

> In negotiating a plea bargain, both sides aim for the best terms they can get, placing bets on what the future will hold. The problem is that the future and certainty are strangers, and not everyone wins a wager. Sometimes, a deal, like a tattoo, does not age well and what appeared to be attractive in the past seems unattractive in the future. But plea agreements, like most tattoos, are written in permanent ink and cannot be redrawn just because one party suffers from the plea bargain form of buyer's remorse.

*United States v. Melton*, 861 F.3d 1320, 1321-22 (11th Cir. 2017); *see also United States v. Masilotti*, 565 F. App'x 837, 839 (11th Cir. 2014)

("[A] knowing and voluntary waiver is valid and enforceable against claims based on subsequent changes in the law unless a provision in the plea agreement states otherwise."). Rudolph assumed the risk of future changes in the law, received all the government promised in return, and is bound by his bargained-for obligations.

But even were this Court to recognize an "illegal sentence" exception, it would not apply. The *Bushert* exception, if it exists, is a narrow exception in which the defendant can appeal only his sentence, not his conviction, on grounds that the sentence exceeded the statutory maximum. It says nothing about collateral attack waivers, nor about challenges that also attack the conviction. The exception is best understood to apply if a court exceeds the statutory maximum *at the time of sentencing. See Portis*, 33 F.4th at 337 (reasoning that a statutory maximum exception "applies only to sentences that exceed the statutory maximum at the time of the sentence" or else "it would cover all manner of later developments—later cases construing the relevant statutes, later constitutional rulings, even later decisions by Congress to lower the statutory maximum.").

Even in circuits that recognize a waiver exception, Rudolph's claims do not qualify, and every circuit court to reach the issue has upheld a collateral attack waiver to bar the movant's *Davis* claims. This Court first reached the issue in *United States v. Joseph*, 811 F.

App'x 595 (11th Cir. 2020) (unpublished), holding that the defendants' *Davis*-based "challenges to their § 924(c) convictions are barred by their appeal waiver." *Id.* at 598. In *Joseph*, the defendants argued "that their conspiracy to commit Hobbs Act robbery charge is insufficient to support their respective § 924(c) convictions." *Id.* Noting that their plea agreements waived their right to claim "that (1) the statutes to which the defendant is pleading guilty are unconstitutional; and/or (2) the admitted conduct does not fall within the scope of the statutes of conviction," this Court dismissed the appeals. *Id.* Rudolph's waivers, of course, are broader and bar him from bringing a collateral attack "on any ground." (NDGA Doc. 18-2 ¶ 14; NDAL Cr. Doc. 537 ¶ 13).

The Seventh Circuit was next to enforce a defendant's collateral attack waiver to bar his *Davis*-based § 2255 motion. *Oliver v. United States*, 951 F.3d 841, 844 (7th Cir. 2020). Noting that "one major purpose of an express waiver is to account in advance for unpredicted future developments in the law," the Seventh Circuit found that plea-bargain waivers like the ones Rudolph signed "are intended to cover situations like this one." *Id.* at 845. *see also Grzegorczyk v. United States*, No. 21-5967, 2022 WL 2347941, at *1 (U.S. June 30, 2022) (denying certiorari because, in finding that defendant's plea waiver barred his *Davis* claim, "the Seventh Circuit correctly concluded that the

defendant's unconditional guilty plea precluded any argument based on the new caselaw").

The Seventh Circuit also recognized that "[f]inality matters in plea agreements, especially when the parties have negotiated for it expressly." *Id.* at 846. As the court recognized, "ignoring appeal waivers in plea agreements could yield perverse consequences" because "[i]f a defendant can make a seemingly beneficial plea agreement and can then renege on his deal and maintain an appeal, then why would the government make these kinds of deals in the future?" *Id.* (internal citations and quotations omitted). Like the defendants in *Oliver*, Rudolph "obtained substantial benefits in exchange for [his] promises," and Rudolph should be held to those promises. *Id.*

The Ninth Circuit also upheld the waiver in a defendant's plea agreement to bar a *Davis* challenge to his § 924(c) conviction. *United States v. Goodall*, 21 F.4th 555 (9th Cir. 2021). As in this case, the defendant in *Goodall* negotiated a plea where the government agreed to dismiss additional charges. 21 F.4th at 559. Like Rudolph, the § 924(c) count that the defendant pleaded guilty to was predicated on an offense that was purportedly no longer a "crime of violence." *Id.*

The Ninth Circuit dismissed the appeal, holding that the plain language of the waiver barred a *Davis* challenge. *Id.* at 561. The court reasoned that "[w]hen a defendant waives his appellate rights, he

knows that he is giving up all appeals, no matter what unforeseen events may happen." *Id.* at 562. "When Goodall agreed to this plea agreement, he apparently believed that it was a good deal for him." *Id.* And "[a] plea agreement is no different in this respect from any other contract in which someone may have buyer's remorse after an unforeseen future event—the contract remains valid because the parties knowingly and voluntarily agreed to the terms." *Id.*

The *Goodall* court also rejected the defendant's invocation of an "illegal sentence" exception, since "[t]he contours of a conviction are fully known when the defendant pleads guilty and waives his appellate rights." *Id.* at 563. Thus, "[a]lthough there always remains a chance the law could change in the defendant's favor, the defendant knowingly and voluntarily assumes that risk because he receives a presumably favorable deal under existing law." *Id.* at 563-64.

The Ninth Circuit recognized that "[i]f the 'illegal sentence' exception is as broadly construed as Goodall urges, a defendant could try to nullify an otherwise valid appellate waiver by simply alleging error in the conviction," which "might undo nearly all appellate waivers." *Id.* at 564. The court noted that were it to create an exception that extended far enough to include a *Davis* claim, "the government would then become wary of offering plea agreements if the defendant could evade his obligations so easily" and "[t]he benefits

31

of plea bargaining—efficiency and finality—would thus erode, as defendants seek to have their cake and eat it too." *Id.*

Most recently, the Sixth Circuit reached the same conclusion and enforced the defendants' collateral attack waivers to bar their *Davis* claims. *Portis v. United States*, 33 F.4th 331 (6th Cir. 2022). The court held that "waivers of the right to bring postconviction challenges remain enforceable after changes in law, here the *Davis* decision." *Id.* at 335. The Sixth Circuit, like its sister circuits, recognized the upheaval that Rudolph's position would entail:

> Were the rule otherwise, it is difficult to see the point of including a collateral-challenge waiver in a plea agreement. As to defendants whose counsel failed to appreciate current law, they could obtain relief based on ineffective assistance. As to defendants whose counsel failed to be omniscient in anticipating future developments in the law, they could obtain relief on the ground that the waiver does not cover future changes in law, whether due to later interpretations of a criminal statute, later constitutional rulings, or later congressional changes to criminal laws or sentencing.

*Id.* at 336. And like the Seventh and Ninth Circuits, the *Portis* court recognized that the cost of gutting the value of waivers would fall on defendants:

> In the short term, that might seem helpful to criminal defendants. But in the long term, it would eliminate a bargaining tool to convince the government to drop pending charges against a defendant.

*Id.* Unlike the defendants in *Oliver* and *Goodall* — and unlike Rudolph — the waiver in *Portis* included a carve-out for sentences above the statutory maximum, like the "illegal sentence" exception hypothesized in *Bushert*. The *Portis* court explained why such an exception does a *Davis*-claimant no good: "it applies only to sentences that exceed the statutory maximum at the time of the sentence. Else, it would cover all manner of later developments—later cases construing the relevant statutes, later constitutional rulings, even later decisions by Congress to lower the statutory maximum." *Id.* at 337.

Rudolph wants to take the hypothesized *Bushert* "illegal sentence" exception and swallow the *Bushert* rule that waivers are enforceable. His argument that an invalid conviction necessarily results in an illegal sentence would mean that any collateral attack that would invalidate a conviction falls outside the waiver. Indeed, the implication of Rudolph's argument is that a waiver can be enforced only if the collateral attack is not meritorious anyway; but if the attack would invalidate a conviction or sentence, then the waiver cannot stand in its way. If this Court accepts Rudolph's effort to extend *Bushert* in this way, collateral attack waivers will have little meaning or value. This

33

Court has routinely guarded against that danger. *See Bascomb*, 451 F.3d at 1296–97 ("Defendants and the government alike benefit from the ability to bargain and undermining the enforceability of such bargains harms all parties that use them."); *see also Howle*, 166 F.3d at 1169 (noting that "[w]aiver would be nearly meaningless if it included only those appeals that border on the frivolous").

Similarly, this Court's sister circuits have rejected the notion that a "miscarriage of justice" exception excuses a *Davis*-claim from a plea-bargain waiver. *See Portis*, 33 F.4th at 339 (holding even were it recognized, "any such exception likely would not apply given the multitude of crimes for which the defendants were indicted"); *Oliver*, 951 F.3d at 847 ("It is not a miscarriage of justice to refuse to put Oliver and Ross in a better position than they would have been in if all relevant actors had foreseen *Davis*."); *see also United States v. Hurtado-Candelo*, No. 21-12809, 2022 WL 1122866, at *4 (11th Cir. Apr. 15, 2022) ("[A]lthough some other circuits have, we have never adopted a 'miscarriage of justice' exception to appeal waivers.").

If the Court views Rudolph's waivers through the lens of whether there is a miscarriage of justice, the Court should look at the entire record, which shows that Rudolph was guilty of the aggravating factors that merited the death penalty, as well as the charges the government

34

dismissed in exchange for his pleas.[5] This is not an "extreme circumstance" justifying excusal from Rudolph's bargained-for promises. *Howle*, 166 F.3d at 1169 n.5. The only injustice would be if Rudolph retained the benefits of his pleas — escaping the death penalty along with the dismissal of charges of which he was guilty, and the forbearance of charges related to his hidden explosives — while avoiding the waivers to which he knowingly and voluntarily agreed.

As the Ninth Circuit said in *Goodall*, "[r]ather than accept the benefit of his bargain, [Rudolph] seeks to parlay the plea agreement's

---

[5] It is notable that Rudolph essentially conceded his *Davis* claims cannot prevail under *Beeman v. United States*, 871 F.3d 1215 (11th Cir. 2017). Success on the merits requires proof that Rudolph's "§ 924(c) conviction[s] resulted from application of solely the residual clause." *See In re Hammoud*, 931 F.3d 1032, 1041 (11th Cir. 2019) (citing *Beeman*). These are questions of "historical fact," requiring showings that "the law was clear at the time of [conviction] that only the residual clause would authorize a finding" of guilt. *Beeman*, 871 F.3d at 1224 n.5. Post-conviction legal developments "cast[] very little light, if any" on the historical inquiry. *Id*. Rudolph argued below that he was convicted under the residual clause because § 924(c)'s elements clause required intentional conduct and his arson offenses did not. (*See* NDGA Doc. 36 at 13-19; NDAL Cv. Doc. 14 at 15-22.) But he acknowledged that it was still "an open question in the Eleventh Circuit" whether the elements clause did in fact require intentional conduct. (NDGA Doc. 36 at 14-16; NDAL Cv. Doc. 14 at 20.) Thus, Rudolph's pleadings admitted it was not "clear at the time" that the residual clause was the only basis for his convictions.

leniency into reversible error. We decline the invitation." *Id.* at 564-65. This Court should do the same.

## 2. Rudolph's Procedural Default Bars His NDGA Claims.

When a prisoner fails to raise a claim on direct appeal, the claim is procedurally defaulted for purposes of collateral review. A court generally may not consider a defaulted claim raised in a § 2255 motion unless the prisoner establishes both "cause" for the default and "prejudice" from the asserted error. *United States v. Frady*, 456 U.S. 152, 167-168 (1982). The Supreme Court has also recognized a narrow alternative, under which a procedural default may be excused if the prisoner can show that he is "actually innocent" of the underlying offense. *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citation omitted). But that exception requires a defendant to show his actual innocence also of charges the government forewent against him. Because Rudolph cannot meet his burden under either alternative, his NDGA claims are barred.

### A. Binding Circuit precedent forecloses Rudolph's effort to show cause to excuse his default.

Rudolph does not dispute that he procedurally defaulted his *Davis* claims. *See Granda v. United States*, 990 F.3d 1272, 1285–86 (11th Cir. 2021) ("This problem arises because [defendant] did not argue in the trial court, or on direct appeal, that his § 924(o) conviction was

invalid since the § 924(c)(3)(B) residual clause was unconstitutionally vague."). And Rudolph cannot show cause to excuse this default. While novelty can be a basis to show cause, Rudolph must show that the new rule was "a sufficiently clear break with the past, so that an attorney representing [him] would not reasonably have had the tools for presenting the claim." *Howard v. United States*, 374 F.3d 1068, 1072 (11th Cir. 2004).

But "[t]hat an argument might have less than a high likelihood of success has little to do with whether the argument is available or not." *Pitts v. Cook*, 923 F.2d 1568, 1572 n.6 (11th Cir. 1991). "[T]he question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was available at all." *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001).

*Davis* applied well-established constitutional vagueness principles, 139 S. Ct. at 2325, that have been on the books for nearly a century. *See, e.g., Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). Given this landscape, a vagueness challenge to § 924(c)(3)(B) was not "novel." *See, e.g., McCoy* at 1258 (holding that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), was not novel because the "building blocks" existed before the decision itself was announced).

In *Granda*, this Court agreed, finding that a *Davis* challenge "is not sufficiently novel to establish cause." 990 F.3d at 1286. Under this Court's prior panel precedent rule, the *Granda* decision forecloses Rudolph's effort to show cause to excuse his procedural default. *Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001).

The *Granda* holding is also correct. Citing *Reed v. Ross*, 468 U.S. 1 (1984), this Court noted that the Supreme Court has identified several "circumstances in which novelty might constitute cause for defaulting a claim." *Granda*, 990 F.3d at 1286. But this Court held that a *Davis* claim fits none of the categories under the *Reed* framework and thus defendants who do not raise their *Davis* challenges on direct appeal fail to show cause sufficient to avoid procedural default. *Id.* at 1286-88.

As is true of Rudolph, "the case law extant at the time of Granda's appeal confirms that he did not then lack the 'building blocks of' a due process vagueness challenge to the § 924(c) residual clause." *Granda*, 990 F.3d at 1287.[6] And "[t]he tools existed to challenge

_____

[6] Rudolph's position is weaker than Granda, whose "best argument that his defaulted vagueness claim was not available on direct appeal [was] that at the time of that appeal" the Supreme Court had rejected a vagueness challenge to ACCA's residual clause in *James v. United States*, 550 U.S. 192 (2007). *Granda*, 990 F.3d at 1287. Rudolph could not have been deterred by *James* as he was sentenced in 2005.

myriad other portions of § 924(c) as vague; they existed to support a similar challenge to its residual clause." *Id.* at 1288. For those reasons, Rudolph "cannot show cause to excuse his procedural default." *Id.*

### B. Supreme Court precedent forecloses Rudolph's effort to show actual innocence, since he admitted his guilt to the equally or more serious charges dismissed in exchange for his pleas.

Since Rudolph cannot show cause and actual prejudice to excuse his procedural default, "his only way around procedural default would be to establish that he is actually innocent." *Granda*, 990 F.3d at 1291–92.[7] The actual innocence exception to the procedural default bar is "exceedingly narrow in scope." *Lynn v. United States*, 365 F.3d 1225, 1235 n.18 (11th Cir. 2004). The actual innocence exception is a "'safety valve' for the 'extraordinary case' where a substantial claim of factual innocence is precluded by an inability to show cause." *Harris v. Reed*, 489 U.S. 255, 271 (1989) (O'Connor, J., concurring). "To establish actual innocence, [the] petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623.

---

[7] Though *Granda* cites the correct framework for actual innocence in the context of a trial, Rudolph pleaded guilty in exchange for the dismissal of other charges. As discussed here, this distinction makes all the difference.

Even if Rudolph could show that he is factually innocent of the § 924(c) convictions he challenges, it is not enough to avoid procedural default. In *Bousley*, the Supreme Court considered the situation — as here — when a defendant pleaded guilty in exchange for the government's forgoing other charges. 523 U.S. at 624. The Court held that "[i]n cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." *Bousley*, 523 U.S. at 624. Rudolph cannot meet this burden.

### 1. *Bousley* requires Rudolph to show actual innocence of dismissed charges to which he already admitted his guilt.

Under *Bousley*, Rudolph must prove that he was actually innocent not just of the § 924(c) charges he now challenges, but also of:

· the offenses under 18 U.S.C. § 844(i) punishable by death – Counts One of the NDGA and NDAL indictments – until the government agreed to withdraw and not file notices of intent to seek death in exchange for Rudolph's guilty plea; and

· the offense under 18 U.S.C. § 844(d) in Count Nineteen of the NDGA Indictment punishable by death but was dismissed by the government in exchange for Rudolph's guilty plea.

Such an effort is doomed by the admissions in Rudolph's plea colloquy and plea agreement, which establish that Rudolph is guilty of the offenses charged in Counts One and Nineteen of the NDGA

Indictment and Count One of the NDAL Indictment. (NDGA Doc. 18-2 ¶ 3, Exhibit A; NDGA Doc. 19 at 22-44).

Under *Bousley*, Rudolph must prove his actual innocence of these offenses – not just his challenged § 924(c) convictions – to avoid procedural default. He cannot, and procedural default bars his claims.

### 2. *Bousley* extends to equally and more serious charges, as measured by the statutory maximum punishment.

*Bousley* left open two question related to the actual innocence requirement: 1) whether the required showing extends to equally serious charges that were foregone, or only more serious charges; and 2) whether the measure of seriousness is the statutory maximum punishment or the Guidelines range. The best reading of *Bousley* extends the showing of actual innocence to equally serious charges, and measures seriousness by the statutory maximum punishment. But Rudolph cannot avoid procedural default no matter how these questions are answered.

Rudolph makes no effort to show his actual innocence of either the aggravating factors that would have rendered his § 844(i) offenses punishable by death, nor the § 844(d) offense that was dismissed completely. Instead, Rudolph tries to avoid *Bousley* on the § 844(i) offenses by arguing that foregoing the death penalty does not qualify

41

as foregoing "more serious charges." This position ignores reality, and rests on an unduly narrow reading of the *Bousley* rule.

As other courts have noted, "[t]he likely rational for *Bousley*'s rule regarding a showing of actual innocence of foregone charges is that the defendant should not receive an unjustified windfall as a result of his guilty plea." *Booth v. Thomas*, No. 7:12-cv-0747, 2015 WL 400662, at *10 (N.D. Ala. Jan. 28, 2015); *see also Lewis v. Peterson*, 329 F.3d 934, 936 (7th Cir. 2003) ("The idea behind this rule is that had the government foreseen *Bailey* it would not have dropped the charge and so the petitioner, who we know wanted to plead guilty, would probably have pleaded guilty to that charge instead, and if it was a more serious charge (or we add, no less serious a charge) he would probably have incurred a lawful punishment no less severe than the one imposed on him under the count to which he pleaded guilty").

The *Bousley* rule thus permits a narrow safety valve to ensure an actually innocent person is not being punished, while ensuring a movant's procedural default is not *rewarded* on top of being excused – as Rudolph seeks. Under *Bousley*, a defendant is not to be put in a better position for waiting years or decades to raise a defaulted claim than had he raised it timely and allowed the government to adjust the plea agreement, supersede the charges, or simply proceed to trial. Following the *Bousley* principle, the proper comparison here is

between the § 844(i) charges in the indictments, statutorily punishable by death, and the § 844(i) charges that Rudolph pleaded guilty to, not statutorily punishable by death because the government agreed to withdraw and not file notices of intent to seek the death penalty. Any other construction of *Bousley* would grant Rudolph the windfall that *Bousley* forbids.

It is axiomatic that an offense punishable by death is more serious than an offense punishable only by imprisonment. *See, e.g.*, *Zant v. Stephens*, 462 U.S. 862, 876 (1983) (holding that a death penalty statute must "must reasonably justify the imposition of a *more severe sentence* on the defendant compared to others found guilty of murder.") (emphasis added). This is shown not only by Supreme Court precedent and common sense, but by this case. It was to avoid the more serious punishment of death that Rudolph pleaded guilty.

If the government had pursued the death penalty for Rudolph's § 844(i) counts, then it would have had to prove additional aggravating factors to a jury beyond a reasonable doubt. By withdrawing and promising not to pursue the death penalty for his § 844(i) offenses, the government permitted Rudolph to forgo prosecution for "a greater offense." *Ring v. Arizona*, 536 U.S. 584, 609 (2002) (holding that factors supporting imposition of the death penalty must be treated as "the functional equivalent of an element of

a greater offense"). Moreover, offenses with different statutory penalties are necessarily different offenses. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016) ("If statutory alternatives carry different punishments, then . . . they must be elements.").[8]

For the dismissed § 844(d) charge – Count Nineteen in the NDGA indictment – Rudolph claims that it does not trigger *Bousley* because it was "merely equally serious" to the crimes to which he pleaded guilty. Rudolph is doubly wrong. First, the § 844(d) charge was more serious than the crimes to which he pleaded guilty because it was punishable by death, unlike the charges that Rudolph pleaded

---

[8] Again, Rudolph cannot show — and does not argue — that he is actually innocent of the offenses that exposed him to the death penalty. For example, Rudolph admitted that the government could prove beyond a reasonable doubt that he did in fact detonate a bomb resulting in the death of Birmingham Police Officer Robert Sanderson. (NDAL Cr. Doc. 537 at 2, 10). Nor can Rudolph contest the aggravating factors alleged by the government to support the penalty's application, for example, that he intentionally killed Sanderson and intended to kill others, that he had little remorse for his actions, and that he was likely to commit additional acts of violence. (NDAL Cr. Doc. 79 at 2-4).

guilty to, which were not statutorily punishable by death once the government agreed to withdraw and not file notices of intent to seek the death penalty. It was also more serious because it increased the "maximum exposure" of punishment that Rudolph was facing. *See United States v. Scruggs*, 714 F.3d 258, 266 (5th Cir. 2013) (extending *Bousley* to forgone counts of same crime based on "district court's discretion to impose consecutive sentences on multiple counts").

Second, even the foregoing of an "equally serious" charge triggers the *Bousley* requirement that Rudolph prove his actual innocence of that charge. *See United States v. Caso*, 723 F.3d 215, 221-22 (D.C. Cir. 2013) (extending *Bousley* requirement to "equally serious" charges); *Lewis v. Peterson*, 329 F.3d 934, 937 (7th Cir. 2003) (same); *Bellomo v. United States*, 297 F. Supp. 2d 494, 499-500 (E.D.N.Y. 2003) ("[I]n consideration of the petitioner's plea, the government forwent prosecuting him on other charges which were as serious or more serious than the one he seeks to vacate and his showing of innocence must also extend to those charges."); *but see United States v. Johnson*, 260 F.3d 919, 921 (8th Cir. 2001) (implying without analysis that one charge must be "more serious" than the other).

In *Bousley* itself, while the Court referred to "more serious" charges, it applied the standard to charges that were equally serious. Specifically, the Court looked to the indictment and other record

45

evidence to determine whether the petitioner had to show his actual innocence of "carrying" as well as "using" a firearm. 523 U.S. at 624. The Court determined such a showing was not required because "there is no record evidence that the Government elected not to charge petitioner with 'carrying' a firearm in exchange for his plea of guilty" and thus it did not constitute a forgone charge. *Id.* Only for that reason did the Court not remand the case for a determination of whether Bousley was actually innocent of the "carrying" form of § 924(c). If the government had forgone a "carrying" § 924(c) offense, Bousley would have had to prove his actual innocence of that offense.

But the "carrying" § 924(c) offense bears the same statutory penalty as the "using" offense for which Bousley was convicted, so if it were unnecessary to show actual innocence of an "equally serious" charge, the Court's analysis would have been superfluous. As the D.C. Circuit recognized, "[t]he fact that the Court nonetheless undertook that analysis suggests that it intended the actual innocence requirement to extend to 'equally serious' charges." *Caso*, 723 F.3d at 221. And as the Seventh Circuit explained,

46

> [t]he logic of the *Bousley* opinion does not require that the charge that was dropped or forgone in the plea negotiations be more serious than the charge to which the petitioner pleaded guilty. It is enough that it is as serious. For if it is as serious, the petitioner would have gained little or nothing had the government and he realized that the charge to which he pleaded guilty was unsound.

*Lewis*, 329 F.3d at 937.

Without explicitly analyzing *Bousley*, this Court reached the same result in *Montano v. United States*, holding that the *Bousley* requirement extends to dismissed charges of the same offense to which the defendant pleaded guilty. 398 F.3d 1276, 1285 (11th Cir. 2005). In *Montano*, the defendant pleaded guilty to a single drug trafficking offense under 21 U.S.C. § 841 and a single § 924(c) offense, in exchange for the dismissal of three other § 841 drug trafficking offenses. *Id.* at 1278-79.

When the defendant brought a collateral attack challenging the § 924(c) offense and tried to invoke the actual innocence exception to procedural default, this Court held that *Bousley* required that the defendant show his actual innocence of the forgone § 841 offenses, even though they each carried the same punishment as the single § 841 offense to which the defendant pleaded guilty. *Id.* at 1285. Whether this Court did so on the "maximum exposure" theory adopted by the Fifth Circuit in *Scruggs* or instead recognized that

47

*Bousley* extends to "equally serious" charges like the Seventh and D.C. Circuits in *Lewis* and *Caso*, Rudolph cannot meet his burden under *Montano* because he cannot show he is actually innocent of the forgone § 844(d) charge.

As to the proper measure of seriousness, the Supreme Court and this Court have recognized the statutory maximum as the proper measure of seriousness in other contexts. *See Lewis v. United States*, 518 U.S. 322 (1996) ("[W]e determine whether an offense is serious by looking to the judgment of the legislature, primarily as expressed in the maximum authorized term of imprisonment."); *Jackson v. Walker*, 585 F.2d 139, 147 (5th Cir. 1978) (assessing claim of prosecutorial vindictiveness by measuring the statutory maximums of the charges brought before and after a successful appeal); *see also Scruggs*, 714 F.3d at 266 ("Three honest-services counts have a potential sentence of sixty years when assessed consecutively and are thus more serious than one count with a twenty-year maximum."). Not only does the statutory maximum provide easily determined bright line comparisons, but it reflects the parties' conduct here: the defendant sought to avoid the more serious statutory maximum, death.

While the D.C. Circuit found the better measure to be the Guidelines range, it did so based on logic that dictated that *Bousley* extended to equally serious charges, in which case Rudolph still loses.

48

*United States v. Caso*, 723 F.3d 215, 223 (D.C. Cir. 2013). The other circuits to choose the Guidelines measure did so when the Guidelines were binding, and their explicit reasoning rested on the then-binding nature of the Guidelines. *See United States v. Halter*, 217 F.3d 551 (8th Cir. 2000); *United States v. Lloyd*, 188 F.3d 184 (3d Cir. 1999). Post-*Booker*, the logic of those opinions points back to the statutory range as the best measure of a crime's seriousness. The flaws in the Guidelines as a measure are laid bare here, where the statutory maximum that the government forewent was death, a punishment that cannot even be calculated or imposed under the Guidelines.

Since Rudolph "can show neither cause, nor prejudice, nor actual innocence, he cannot overcome procedural default." *Granda*, 990 F.3d at 1292.

**3. The NDGA court did not abuse its discretion by raising procedural default *sua sponte,* nor err in finding that the government did not deliberately waive procedural default by inadvertently omitting it from its initial response.**

Rudolph asserts that the NDGA court erred because it requested supplemental briefing on procedural default after this Court's decision in *Granda*. Rudolph incorrectly asserts that the government deliberately waived this defense by failing to raise it in its initial response. This inadvertent omission constituted, at most, forfeiture. Thus, following precedent from the Supreme Court and this Court,

49

the district court acted within its discretion to order supplemental briefing on procedural default and then, once Rudolph had a chance to respond, deny his motion on that basis.

### A. The court did not abuse its discretion by ordering supplemental briefing and ruling on procedural default.

Rudolph faults the government for not briefing procedural default in its initial response to his motion. Rudolph is correct that the government should have raised the issue earlier. It was the district court's prompting that caused the realization that Rudolph's case fell into the category of *Davis* cases when the government consistently raises procedural default: those involving the dismissal of equally or more serious charges. (NDGA Doc. 46 at 2-5). But, at most, this inadvertent omission constituted forfeiture, or "the failure to make the timely assertion of a right." *United States v. Olano*, 507 U.S. 725, 733 (1993); *see also United States v. Campbell*, 26 F.4th 860, 877 (11th Cir. 2022) ("[I]t is more appropriate to treat the failure to raise an issue in a brief as forfeiture, not waiver.").

Rudolph highlights the importance of the adversarial party system, but the "party presentation principle is supple, not ironclad," and there are "no doubt circumstances in which a modest initiating role for a court is appropriate." *Campbell*, 26 F.4th at 872. "This is especially true in habeas cases [where] the Supreme Court has held

that courts of appeals have the authority even 'to raise a forfeited timeliness defense on their own initiative.'" *Griffin v. United States*, 847 F. App'x 752, 757 (11th Cir. 2021) (citing *Wood v. Milyard*, 566 U.S. 463, 471-73 (2012)). And even more so where the defendant has waived his right to bring the challenge and thus the government need not be put to briefing all. *See United States v. Buchanan*, 131 F.3d 1005, 1008 (11th Cir. 1997) ("[P]lea agreements containing such waivers save the government time and money by conveying an immediate and tangible benefit in the saving of prosecutorial resources.").

In *Day v. McDonough*, the Supreme Court recognized that certain "threshold barriers — exhaustion of state remedies, procedural default, nonretroactivity" although nonjurisdictional, "implicat[e] values beyond the concerns of the parties." 547 U.S. 198, 205 (2006) (internal quotations omitted). Noting that "the Courts of Appeals have unanimously held that, in appropriate circumstances, courts, on their own initiative, may raise a petitioner's procedural default," the Court held that "district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition." *Id.* at 207-9; *see also Oakes v. United States*, 400 F.3d 92, 97 (1st Cir. 2005) ("[W]e hold that a district court has the discretion, in a section 2255 case, to raise questions of procedural default *sua sponte*,

even when the government has filed a reply and eschewed any reference to that defense.").

Applying *Day*, this Court held that "a district court had the authority to raise [a threshold defense] itself once the government failed to do so in its response to [the petitioner's] § 2255 motion" and listed those defenses: "timeliness, exhaustion, *procedural bar*, and nonretroactivity." *Burgess v. United States*, 874 F.3d 1292, 1298 (11th Cir. 2017) (emphasis added).[9] That is what the court did here.

Before ruling on a defense raised *sua sponte*, the court should "give the parties fair notice and a chance to present their positions on the [threshold] defense." *Id.* at 1298-99. The court also should "determine whether any delay in the application of the [defense] significantly prejudiced [the petitioner] and "whether the interests of justice would be better served by addressing the merits." *Id.*

The district court honored the adversarial system and followed the process set forth in *Day* and *Burgess*. Rather than simply rule on

---

[9] In *Burgess*, this Court held that the failure to invoke a collateral-attack waiver – unlike a threshold defense like procedural default – was subject to civil rules rather than the *Day* process. Even then, "district courts may make limited inquiry into litigants' possible claims and defenses, without violating the party-presentation principle that animates our judicial system." *Burgess*, 874 F.3d at 1301. The court's actions here fell within its discretion under either the *Day* habeas process or the civil process described in *Burgess*.

Rudolph's unexcused procedural default — established by this Court's intervening precedent in *Granda* — the court asked for supplemental briefing that gave both parties a chance to present their positions.

Rudolph suggests that if the court wanted to raise this issue *sua sponte*, it had to do so "at the *start* of the case, rather than the end." (Def. Br. at 33). Rudolph cites no support for this proposition, nor for his claim that "the court, no less than the government, made an intentional choice not to float the procedural-default balloon. And it had to live with that decision later." (*Id.*). This argument faults the district court for recognizing this Court's intervening precedent in *Granda* and runs contrary to *Day* and *Burgess*, which expressly permit courts to raise procedural default even after the government responds.

As discussed below, this is not a scenario when the court applied a defense over an intentional waiver. Nor did the court apply procedural default over the parties' silence. The court saw an issue worthy of limited inquiry given intervening precedent and asked for the parties' positions. This was within the court's wide discretion. *See Smith v. Psychiatric Solutions, Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014) ("District courts have unquestionable authority to control their own dockets [and] [t]his authority includes broad discretion in deciding how best to manage the cases before them.").

If the government sought to waive Rudolph's procedural default, it could have done so in response to the court's order for supplemental briefing. Instead, the government filed a brief invoking *Granda* and Rudolph responded. The district court was thus well-positioned with briefing from both parties. Under *Day* and *Burgess*, the district court did not abuse its discretion.

### B. The district court did not err by finding that the government did not deliberately waive procedural default.

Courts are not free "to bypass, override, or excuse a State's deliberate waiver of a limitations defense." *Wood*, 566 U.S. at 466. But "[w]aiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *Olano*, 507 U.S. at 733. Though this Court reviews *de novo* a district court's legal conclusions regarding waiver, any factual findings underlying those legal conclusions are reviewed only for clear error. *Witt v. Metro. Life Ins. Co.*, 772 F.3d 1269, 1274 (11th Cir. 2014).

In *Wood*, the Supreme Court held that the government's waiver barred the Tenth Circuit from raising a timeliness issue *sua sponte*. Much of the reasoning of *Wood* emphasizes that the court of appeals – not the trial court – raised the issue *sua sponte*. As the Court held, "[w]hen a court of appeals raises a procedural impediment to

54

disposition on the merits, and disposes of the case on that ground, the district court's labor is discounted and the appellate court acts not as a court of review but as one of first view." *Wood*, 566 U.S. at 474; *see also id.* at 473 ("[A]ppellate courts ordinarily abstain from entertaining issues that have not been raised and preserved in the court of first instance."). That concern – and thus much of the logic and principle underlying *Wood* – is not present here, where the district court devoted its labor to identifying the procedural default issue, obtaining supplemental briefing, and deciding the issue in a reasoned opinion.

Moreover, the government's conduct in *Wood* is readily distinguished from this case. There, "the State twice informed the District Court that it 'will not challenge, but [is] not conceding' the timeliness of Wood's petition" and "after expressing its clear and accurate understanding of the timeliness issue, deliberately steered the District Court away from the question and towards the merits of Wood's petition." *Id.* at 474.

Rudolph points to no such affirmative act or statement from the government in this case. Here, the district court correctly determined that the government had not "strategically withheld" the defense – and Rudolph points to nothing suggesting any strategic advantage to the government by not raising the defense in its initial response, let alone any way in which the district court's factual findings were clearly

erroneous. (NDGA Doc. 49 at 28-29). The court further found that there was no prejudice to Rudolph in the delay, given the case had long been stayed and he was seeking another stay – and Rudolph has identified no such prejudice, nor any way in which the district court's factual findings were clearly erroneous. (*Id.*). And because "procedural default is manifest from the record in this case ...[t]he interests of justice and judicial economy would be better served by dismissing Rudolph's motion on the basis of procedural default." (*Id.* at 29).

Unlike in *Wood*, the government's initial response is merely silent on procedural default. (NDGA Doc. 37).[10] At the first inquiry from the court, the government articulated why Rudolph's claims are barred by procedural default. (NDGA Doc. 44). Had the government sought to waive Rudolph's procedural default, it could have done so in response to the order for supplemental briefing. It did the opposite. And while Rudolph complains about the time it took the district court to raise the issue, the court has wide discretion to manage its docket. Moreover, the calendar shows that the case was stayed for most of the purported delay: Rudolph filed his amended motion in

---

[10] Mere silence distinguishes this case even from *Day*, where the government erroneously *conceded* that the habeas petition was timely until the judge noticed the government's error, and the Court still found mere forfeiture of the timeliness defense that the district court could raise *sua sponte*. 547 U.S. at 201-2.

August 2020, the government responded in September, Rudolph replied in October, and the case was then stayed from December 2020 until June 2021 awaiting the *Borden* decision – during which time this Court issued *Granda*. (NDGA Docs. 36-41). The court then ordered supplemental briefing in July 2021, just a month after it was apprised of the *Borden* opinion. (NDGA Docs. 42, 43). Given the 7-month stay, Rudolph fails to show any substantial delay or clear error by the district court.

Rudolph stretches outside the record in an attempt to manufacture waiver, comparing the government's response in his case to responses filed to other *Davis* motions. This Court rejects the notion that waiver can be found simply because the government did not brief an issue about which it was aware. *Campbell*, 26 F.4th at 877. Instead, "it is more appropriate to treat the failure to raise an issue in a brief as forfeiture, not waiver." *Id.*

Even were comparisons to positions taken in other cases a proper basis for inferring the government's intent, the government's position proves the opposite of Rudolph's claim. As Rudolph noted below, the position taken by the government was that it would not waive procedural default where other charges were forgone:

> In some cases arising under *Davis*, the government will opt not to raise these affirmative defenses, as it has done in cases arising

under *Johnson v. United States*, 135 S. Ct. 2551 (2015). Here, however, enforcement of these defenses is proper and just because, as discussed in detail below, the government forwent more serious charges in return for [defendant's] plea on the § 924(c) count.

(NDGA Doc. 45 at 5). That citation shows the opposite of what Rudolph suggests. Rudolph is in the latter category – the government forwent charges in return for a plea on the § 924(c) counts – where the government consistently raised procedural default. This indicates that the omission of procedural default in the initial response was inadvertent, not deliberate.

The district court did not clearly err in finding that the government did not deliberately waive procedural default and did not abuse its discretion in raising the issue *sua sponte*, inviting supplemental briefing, and denying Rudolph's motion on that basis.

## CONCLUSION

Rudolph's collateral attacks on his § 924(c) convictions are barred by his bargain-for plea waivers and procedural default. The denials of his § 2255 motions should be affirmed.

<div style="float:left">

RYAN K. BUCHANAN
*United States Attorney*

/s/Gabriel A. Mendel
GABRIEL A. MENDEL
*Assistant United States Attorney*

</div>

Respectfully submitted,
PRIM F. ESCALONA
*United States Attorney*

/s/Michael B. Billingsley
MICHAEL B. BILLINGSLEY
*Assistant United States Attorney*

## CERTIFICATE OF COMPLIANCE AND SERVICE

This brief complies with the typeface requirements of Fed. R. App.
P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6)
because it has been prepared in a proportionally spaced typeface using
Microsoft Word 2016 word processing software in 14-point Goudy
Old Style.

This brief complies with the 13,000 word type-volume limitation
of Fed. R. App. P. 32(a)(7)(B) because, according to the word
processing software, it contains 12,932 words, excluding the parts of
the brief exempted by Fed. R. App. P. 32(f).

Today, this brief was uploaded to the Court's website using the
CM/ECF system, which automatically sends notification to the parties
and counsel of record:

W. Matthew Dodge                    Deanna Lee Oswald
Federal Defender Program, Inc.      Office of the Federal Public
101 Marietta Street. NW             Defender
Centennial Tower, Suite 1500        200 Clinton Ave W Ste 503
Atlanta, GA 30303                   Huntsville, AL 35801

July 13, 2022

                                    /s/Gabriel A. Mendel
                                    GABRIEL A. MENDEL
                                      Assistant United States Attorney

59